IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| METHODIST HEALTHCARE SYSTEM OF SAN ANTONIO, LTD., L.L.P. <br><br> Plaintiff, <br><br> v. <br><br> BLUE CROSS BLUE SHIELD OF ILLINOIS, A DIVISION OF HEALTH CARE SERVICE CORPORATION, A MUTUAL LEGAL RESERVE COMPANY; TRUSTEES OF SOUTHWEST MULTI-CRAFT HEALTH & WELFARE TRUST FUND; SOUTHWEST SERVICE ADMINISTRATORS, INC. <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. _____ |

## PLAINTIFF'S ORIGINAL COMPLAINT

NOW COMES, Plaintiff, METHODIST HEALTHCARE SYSTEM OF SAN ANTONIO, LTD., L.L.P. ("Plaintiff"), by and through their attorneys, Polsinelli PC, and complains of Defendants BLUE CROSS BLUE SHIELD OF ILLINOIS, A DIVISION OF HEALTH CARE SERVICE CORPORATION, A MUTUAL LEGAL RESERVE COMPANY; TRUSTEES OF SOUTHWEST MULTI-CRAFT HEALTH & WELFARE TRUST FUND; and SOUTHWEST SERVICE ADMINISTRATORS, INC. (collectively "Defendants") as follows:

### STATEMENT OF FACTS

#### A. PARTIES

1. Plaintiff, Methodist Healthcare System of San Antonio, Ltd., L.L.P. d/b/a/ Methodist Hospital ("Methodist") is a Texas limited partnership with its principal place of business in Bexar County, Texas. Methodist is a citizen of the State of Texas. Plaintiff's general partner is Columbia/HCA Corporation of Central Texas, which is a corporation incorporated under the laws

of the State of Texas. Columbia/HCA Corporation of Central Texas is a citizen of the State of Texas.

2.       Defendant, Blue Cross Blue Shield of Illinois, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company ("BCBSIL"), is a corporation headquartered in the State of Illinois doing business in Texas. Defendant is a citizen of the State of Illinois. Defendant does not maintain a regular place of business in Texas and does not have a designated agent for service of process. This lawsuit arises from Defendant's business in Texas, and it may therefore be served through the Texas Secretary of State pursuant to Tex. Civ. Prac. & Rem. Code § 17.044(b). Defendant's home office is located at 300 East Randolph Street, Chicago, Cook County, Illinois 60601-5014. Defendant is a licensee of the Blue Cross and Blue Shield Association and is licensed to offer Blue Cross and Blue Shield branded health plans in the State of Illinois. As explained below, Defendant's Subscribers are not confined to the State of Illinois, and routinely receive hospital services in other states, including Texas, for which Defendant is responsible.

3.       Defendant Trustees of Southwest Multi-Craft Health & Welfare Trust Fund are the trustees of a collectively bargained multiemployer welfare benefit trust fund within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USC §1002(3). Defendant does not maintain a regular place of business in Texas and does not have a designated agent for service of process. This lawsuit arises from Defendant's business in Texas, and it may therefore be served through the Texas Secretary of State pursuant to Tex. Civ. Prac. & Rem. Code § 17.044(b). Defendant's home office is located at 6121 Indian School RD NE, Suite 123, Albuquerque, Bernalillo County, NM 87110-3102.

4.       Defendant Southwest Service Administrators, Inc. is a corporation organized under the laws of the State of Arizona doing business in Texas. Defendant is a citizen of the State of

Arizona. Defendant is registered to do business in the State of Texas and may be served with process by serving its registered agent, Thomas Shanklin at 2425 N. Central Expressway, Ste. 120, Richardson, Dallas County, Texas 75082-2714. Defendant's home office is located at 2550 W Union Hills Dr., Ste. 290, Phoenix, Maricopa County, AZ 85027-5198.

### B. JURISDICTION AND VENUE

5. This Court has personal jurisdiction over Defendants because they conduct substantial business in Texas, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here. Further, Defendant BCBSIL is an affiliate of Blue Cross and Blue Shield of Texas ("BCBSTX") as defined in the Hospital Agreement for PPO/POS Network Participation (eff. Nov. 1, 2016) (as amended, the "Agreement"). Part III(H) of the Agreement specifically allows affiliates of BCBSTX access to the benefits of the Agreement (namely in-network reimbursement rates) provided the affiliates comply with all terms and provisions of the Agreement. As such, by accessing the benefits of the Agreement, BCBSIL agreed to comply with its terms, including the requirement that the Agreement be governed by Texas law. Defendants insure and/or administer health plans that cover Texas residents. Upon information and belief, the Subscriber-patient at issue in this matter resides in the State of Texas. The Subscriber-patient received medical services in the State of Texas. Defendants issued and/or administered these health plans to/for Texas residents knowing of the possibility of having to resolve disputes based on Texas law. Defendants therefore have sufficient contacts with the State of Texas and do business in the State of Texas for purposes of personal jurisdiction, and it is reasonably foreseeable that they would be hauled into a Texas court for their actions in connection with insuring and administering health plans that cover Texas residents. Additionally, this Court has personal jurisdiction because ERISA provides for nationwide service of process, and Defendants have sufficient minimum

contacts with the United States as they do business in and are citizens of the United States. *See* 29 U.S.C. § 1132(e)(2).

6. This Court has original subject-matter jurisdiction under federal question jurisdiction pursuant to 28 U.S.C. § 1331 because ERISA is a federal statute that arises under laws of the United States. This Court may exercise supplemental jurisdiction over Plaintiffs state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district—as described below, Plaintiff's facility in which medical services were provided to the Defendants' Subscriber is located in the San Antonio Metropolitan area, which is located in the Western District of Texas, thus making venue proper under 28 U.S.C. § 1391(b)(2). Venue is also proper under 29 U.S.C. § 1132(e)(2) because Plaintiff has asserted a claim under ERISA and the breach of the health plan at issue also took place (in part) in this judicial district, as Defendants denied reimbursement for medical services provided in the Western District of Texas.

## C. FACTUAL BACKGROUND

### I. THE BLUECARD PROGRAM

8. Plaintiff is an acute care hospital system in the San Antonio area of Texas. Plaintiff provides medically necessary services to the Greater San Antonio metropolitan community.

9. As part of its provision of medically necessary services to the San Antonio community, Plaintiff contracts with non-party Blue Cross Blue Shield of Texas ("BCBSTX") through the Agreement. The Agreement specifies the terms and conditions under which Plaintiff will treat patients with Blue Cross and Blue Shield ("BCBS") health plans (referred to in the

Agreement as "Subscribers") and be reimbursed for that treatment. Under the Agreement, Plaintiff is entitled to be paid specified rates for the provision of medically necessary services to a Subscriber.

10. The Agreement is far broader than the relationship between just Plaintiff and BCBSTX and Subscribers enrolled in a BCBSTX health plan, however. The Agreement applies to the treatment that Plaintiff provides to any Subscribers enrolled in a BCBS health plan, including Subscribers who have BCBS health plans through another state's Blue Cross and/or Blue Shield licensee (like BCBSIL). Defendant BCBSIL is the Blue Cross and/or Blue Shield licensee for the State of Illinois. Thus, the Agreement applies to treatment that Plaintiff provides to Defendants' Subscribers.

11. When Plaintiff treats a Subscriber who has a BCBS-branded health plan administered or underwritten by a Blue Cross and/or Blue Shield licensee other than BCBSTX, the Agreement still governs Plaintiff's provision of that treatment and the reimbursement for it. Plaintiff's request for payment (referred to as a "Claim") is handled through a system known as the "BlueCard Program." Under the BlueCard Program, Plaintiff submit its claims to BCBSTX for the services it provided to a Subscriber. BCBSTX then reviews the claim, determines the amount that would be payable under the Agreement for the services that Plaintiff provided to the Subscriber, and forwards the claim to the BCBS health plan that insures the Subscriber (referred to as the "Home Plan"). The Home Plan then applies the Subscriber's health benefits, makes coverage determinations, and either denies payment for the services, or approves payment. BCBSTX then transmits the Home Plan's decision and payment to Plaintiff. Importantly, the payment rates specified in the Agreement between BCBSTX and Plaintiff governs the amount Plaintiff is entitled to be reimbursed for the services provided to the Subscriber, regardless of

whether that Subscriber is a participant in a BCBSTX health plan or another state's BCBS health plan.

12. Upon information and belief, Defendant Trustees of Southwest Multi-Craft Health & Welfare Trust Fund are the trustees of a collectively bargained multiemployer welfare benefit trust fund that insurers the Subscriber whose care is at issue in this matter (as described below).

13. Upon information and belief, Defendant Southwest Service Administrators, Inc. is a third party administrator that administers benefits to the Subscriber whose care is at issue in this matter (as described below).

14. As is explained in more detail below, this dispute involves Plaintiff's provision of hospital services to one of Defendants' Subscribers that are payable under the Agreement and for which Defendants have incorrectly refused to pay Plaintiff. The Subscriber in question received covered services from Plaintiff, and Defendants are obligated to approve coverage for those services under the Subscriber's health plan and issue payment to Plaintiff for them.

II. FACTS CONCERNING THE CLAIM AT ISSUE

15. <u>Patient E.V.- Admitted March 17, 2020, Discharged March 28, 2020</u>: Patient E.V. was a newborn infant who was delivered at Methodist Hospital (the "Hospital") at 37 gestational weeks. At five minutes of life, she began grunting respirations that required continuous positive airway pressure ventilation. E.V. was therefore admitted to the Hospital's neonatal intensive care unit ("NICU"), started on IV fluids and antibiotics, began total parenteral nutrition, and had blood cultures drawn. Once her cultures returned negative on March 18, 2020, she was taken off IV antibiotics. On March 18, 2020, E.V. was weaned to room air, but required placement of a naso-gastric tube and began gavage feeds. On March 19, 2020, E.V. stopped total parenteral nutrition with gavage feeds continued, and started on supplemental oral feeds.

16. During her admission, E.V. required treatment for hyperbilirubinemia with ABO blood group isoimmunization from March 18-24, 2020. E.V. slowly progressed with oral feeds until she was gaining weight appropriately, and finally had her naso-gastric tube removed. On March 28, 2020, E.V. passed an infant car seat study and was discharged home with her parents in stable condition.

17. The Hospital timely notified BCBSIL of E.V.'s inpatient admission and requested inpatient authorization on March 23, 2020. On March 26, 2020, the Hospital received a phone call from American Health Group, a utilization management vendor acting on behalf of Defendants, and its representative informed the Hospital that authorization would not be given until after discharge. American Health Group, on behalf of Defendants, ultimately authorized E.V.'s inpatient admission from March 21-28, 2020 under authorization number 997869666. On April 6, 2020, the Hospital called American Health Group regarding the authorized dates and spoke with a representative who informed the Hospital that E.V. was approved for dates of service March 21-28, 2020. The American Health Group representative also stated that they "do not include the days that Mom is still in-house. Once Mom discharges, that's when the [authorized] days start. The prior days will be covered under global."

18. The Hospital then timely submitted its claim (Claim No. 02020094505E2590X) for reimbursement to BCBSTX. BCBSTX, on behalf of Defendants, denied the Hospital's claim by remittance dated April 24, 2020, asserting E.V.'s coverage terminated due to non-payment of premiums. The Hospital called BCBSTX to follow-up on May 8, 2020, and a BCBSTX representative stated that the father's employer had not paid the insurance premiums, that E.V. was covered by a labor fund policy, and that BCBSTX would reach out to a specialist to have the claim reprocessed because E.V.'s coverage should still be active in this case. The Hospital called

Defendant Southwest Service Administrators, Inc. (the plan's claims administrator) on May 22, 2020, and spoke with a representative that stated she could not review the Hospital's claim without an audit number.

19. Then, by electronic remittance from BCBSTX on behalf of Defendants dated June 9, 2020, Defendants reversed the initial denial and issued a new denial, this time asserting no authorization. The Hospital rebilled its claim on June 17, 2020, billing 2 days at NICU Level 3 and 9 days at NICU Level 2. By electronic remittance from BCBSTX on behalf of Defendants dated July 13, 2020, Defendants denied the Hospital's rebilled claim for an alleged lack of authorization.

20. The Hospital therefore timely submitted an appeal to BCBSTX, for forwarding to Defendants. The appeal requested a medical necessity review and enclosed E.V.'s medical record. On August 19, 2020, the Hospital called BCBSTX and spoke to a representative, who admitted that 7 days of E.V.'s inpatient admission were authorized. The representative instructed the Hospital to call and follow-up with American Health Group, which the Hospital did that day. American Health Group's representative confirmed that authorization number 997869666 covered dates of service March 21-28, 2020, but did not cover all dates of the admission.

21. The denial of the Hospital's claim for no authorization is in error for multiple reasons. As explained above, American Health Group, on behalf of Defendants, actually authorized seven days of E.V.'s inpatient admission (from March 21-28, 2020), under authorization number 997869666. Furthermore, E.V. was delivered by cesarean section; thus,

under federal law, authorization was not required for the first 96 hours of her admission.[1] This is consistent with American Health Group representative's statement to the Hospital on April 6, 2020 that they "do not include the days that Mom is still in-house. Once Mom discharges, that's when the [authorized] days start. The prior days will be covered under global." E.V.'s mother was not discharged until March 21, 2020. Therefore, authorization was not required from March 17-20, 2020, while E.V.'s mother remained in the Hospital.

22.     Moreover, according to the Newborns' and Mother's Health Protection Act of 1996[2], Defendants cannot restrict benefits for a hospital length of stay in connection with childbirth to less than 48 hours in case of a vaginal delivery, or less than 96 hours in the case of a cesarean section. E.V.'s mother gave birth via cesarean section on March 17, 2020. Thus, E.V. was entitled to 96 hours of post-delivery inpatient care, and Defendants cannot deny payment to the Hospital for that portion of her admission (March 17-19, 2020).

23.     Additionally, as to the remaining dates of service, there is no indication that Defendants performed a medical-necessity review on appeal.

24.     Finally, there was no prejudice due to any alleged lack of authorization: the Hospital rendered medically-necessary care to Defendants' Subscriber, and Defendants have never challenged the appropriateness of that care. The medical necessity of the services provided to E.V.

---

[1] 29 U.S.C. § 1185(a)(1)(B) ("A group health plan, and a health insurance issuer offering group health insurance coverage, may not require that a provider obtain authorization from the plan or the issuer for prescribing any length of stay required under subparagraph (A).")

[2] 29 U.S.C. § 1185(a)(1)(A)(ii) ("A group health plan, and a health insurance issuer offering group health insurance coverage, may not except as provided in paragraph (2) . . . restrict benefits for any hospital length of stay in connection with childbirth for the mother or newborn child, following a cesarean section, to less than 96 hours.")

is confirmed by E.V.'s medical records and corroborated by the InterQual guidelines[3] for inpatient status.

25. In sum, the Hospital provided medically-necessary services to Patient E.V. and is entitled to payment in full for those services. According to the terms of the Agreement, the Hospital is entitled to be paid $40,282.00 for the medically-necessary services provided to Patient E.V.

26. Plaintiff has provided pre-suit notice to Defendant BCBSIL of its wrongful denial of benefits for this Subscriber's hospital services.

27. The Court should therefore determine that Defendants' denial of payment to Plaintiff for the treatment it provided to the Subscriber described above was a wrongful denial of benefits, and order Defendants to pay Plaintiff the total amount due under the Agreement of $40,282.00.

### D.   CAUSES OF ACTION

**COUNT I- FAILURE TO COMPLY WITH HEALTH BENEFIT PLAN IN VIOLATION OF ERISA (ALL DEFENDANTS)**

28. The foregoing paragraphs are incorporated by reference.

29. As explained above, Plaintiff provided medically necessary covered services to the Subscriber described above. Plaintiff is therefore entitled to be paid the amounts due under the Agreement for that care.

30. Defendants are not direct Parties to the Agreement (rather Defendant BCBSIL is an affiliate of BCBSTX for purposes of the Agreement), however, the Agreement applies to Plaintiff's treatment of Defendants' Subscriber. Plaintiff is also entitled to payment under the

---

[3] InterQual guidelines/criteria are a first-level screening tool to assist in determining if the proposed services are clinically indicated.

terms of the Subscriber's health plan, because the services provided were medically necessary covered services that are covered by the Subscriber's health plan.

31. Upon information and belief, the Subscriber described above is a Subscriber to an employer-sponsored health insurance policy that Defendants administer or underwrite. Thus, ERISA governs that health plan.

32. Plaintiff is entitled to enforce the terms of the Subscriber's health plan as the Subscriber's assignee under 29 U.S.C. § 1132(a)(1)(B). Upon admission to the Hospital, each patient or their representative signs a form, often referred to as Conditions of Admission, that includes an assignment of the patient's health insurance benefits (including an assignment of rights) to Plaintiff. Plaintiff's claims for reimbursement indicated in field 53 of the UB that it was being submitted pursuant to an assignment of benefits.

33. When Plaintiff appealed the wrongful denial of benefits described above, it requested copies of the relevant health plan documents along with a statement of the plan's review procedures and time limits applicable to such review procedures including any contractual limitations and any plan provisions that Defendants were relying upon for its denial. Defendants did not provide the requested health plan documents, plan provisions, or otherwise advise Plaintiff of contractual limitations or other relevant procedures from the health plan documents at any point during the claims adjudication process.

34. As explained above, Plaintiff provided medically necessary services to the Subscriber at issue. Those services qualify as covered services under the Subscriber's health plan, and Defendants are therefore obligated to pay Plaintiff for those services.

35. As explained above, Defendants failed to pay Plaintiff for the covered services that it provided to the Subscriber. Defendants' wrongful denial of benefits for the medically

necessary inpatient hospital services that Plaintiff provided to the Subscriber breached the terms of the Subscriber's health plan, which Plaintiff has standing to sue under through the Subscriber's assignments of benefits and rights.

36. As a proximate result of Defendants' breach of the Subscriber's health plan, Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court. Plaintiff is entitled to recover payment in an amount not less than $40,282.00 for the medically necessary covered services it provided to the Subscriber as pleaded above.

### COUNT II- BREACH OF CONTRACT (BCBSIL)

37. The foregoing paragraphs are incorporated by reference.

38. As alleged above, Plaintiff is a party to the Agreement which provides the terms and conditions under which Plaintiff will treat Subscribers with BCBS health plans and be reimbursed for that treatment. Defendant BCBSIL is an affiliate of BCBSTX as defined in the Agreement. Part III(H) of the Agreement specifically allows affiliates of BCBSTX access to the benefits of the Agreement (namely in-network reimbursement rates) provided the affiliates comply with all terms and provisions of the Agreement. Further, the Agreement specifically provides that Plaintiff will provide covered services to Subscribers of affiliates (including Defendant BCBSIL) as set forth in and subject to the terms and conditions of the Agreement. As an affiliate of BCBSTX, Defendant BCBSIL is bound by the terms of the Agreement regarding the care provided to the Subscribers at issue.

39. Under the Agreement, Plaintiff is entitled to be paid specified rates for the provision of medically necessary services to a Subscriber.

40. Plaintiff provided medically necessary covered services to the Subscriber whose hospital admission is at issue, and those services are covered under the terms of the Agreement.

41. Defendant BCBSIL breached the Agreement by failing to pay for the medically necessary services Plaintiff provided to the Subscriber described above.

42. Plaintiff suffered damages due to Defendant BCBSIL's breach of the Agreement; specifically, Plaintiff is entitled to be reimbursed in an amount not less than $40,282.00 under the Agreement for the medically necessary covered services that Plaintiff provided.

### COUNT III- BREACH OF CONTRACT (FOR PLANS NOT SUBJECT TO ERISA) (ALL DEFENDANTS)

43. The foregoing paragraphs are incorporated by reference.

44. Alternatively, Plaintiff provided medically necessary covered services to the Subscriber whose hospital admission is at issue, and those services are covered under the terms of the Subscriber's health plan. To the extent that the health plan is not subject to ERISA, Plaintiff is entitled to recover payment under the plan under a common law claim for breach of contract.

45. The health plan is a contract between the Subscriber and Defendants under which Defendants agree to cover medically necessary covered medical services that the Subscriber receives. Plaintiff has standing to sue for breach of contract for Defendants' failure to pay for the Subscriber's medical treatment because the Subscriber assigned its benefits and rights under the health plan to Plaintiff.

46. Plaintiff performed its obligations under the Subscriber's health plans by providing medically necessary covered services to the Subscriber.

47. Defendants breached the Subscriber's health plan by failing to issue payment to Plaintiff at the rates set forth in the Agreement for the medically necessary covered services that Plaintiff provided.

48. Plaintiff suffered damages due to Defendants' breach of the Subscriber's health plan; specifically, Plaintiff is entitled to be reimbursed in an amount not less than $40,282.00 under the Agreement for the medically necessary covered services that Plaintiff provided.

## CONDITIONS PRECEDENT

49. All conditions precedent have been performed or have occurred.

## ATTORNEYS' FEES

50. The foregoing paragraphs are incorporated by reference.

51. Plaintiff is entitled to an award of attorneys' fees under 29 U.S.C. § 1132(g) and Tex. Civ. Prac. & Rem. Code §§ 38.001.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of the above-styled action for all claims for which a jury is available.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Methodist Healthcare System of San Antonio, Ltd., L.L.P. d/b/a/ Methodist Hospital hereby requests that Defendants Blue Cross Blue Shield of Illinois, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company, Trustees of Southwest Multi-Craft Health & Welfare Trust Fund and Southwest Service Administrators, Inc. be cited to appear and answer this Original Complaint, and that upon final trial and determination thereof, that judgment be entered in favor of the Hospital awarding it the following relief:

A. The amount due under the Agreement and the terms of the Subscriber's health plan;
B. Reasonable attorneys' fees and court costs; and
C. Such other and further relief to which Plaintiff may be entitled.

Dated this the 24th day of April 2024.

        Respectfully submitted,

        POLSINELLI PC

        */s/ Adam D. Chilton*
        Adrienne E. Frazior
        TX State Bar No. 24059546
        Adam D. Chilton
        TX State Bar No. 24092255
        POLSINELLI PC
        2950 N. Harwood, Suite 2100
        Dallas, Texas 75201
        Telephone: (214) 661-5515
        Facsimile:  (214) 279-2335
        adam.chilton@polsinelli.com

        *Counsel for Plaintiff Methodist Healthcare System of San Antonio, Ltd., L.L.P.*

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiff hereby certifies that the foregoing document was e-filed with the Court on April 24, 2024.

        */s/ Adam D. Chilton*